IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JODY McCLUSKEY,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ]   2:23-cv-00262-ACA |
| | ] |
| **LOCAL 78 OF THE INTERNATIONAL** | ] |
| **ALLIANCE OF THEATRICAL STAGE** | ] |
| **EMPLOYEES,** | ] |
| | ] |
| **Defendant.** | ] |

## **MEMORANDUM OPINION**

Plaintiff Jody McCluskey is a stagehand and member of Defendant Local 78 of the International Alliance of Theatrical and Stage Employees. After he worked a job at the Birmingham-Jefferson Convention Complex ("BJCC"), an Alabama Ballet employee falsely accused Mr. McCluskey of gawking at the dancers during a performance. Local 78 repeatedly violated its own constitution during its investigation of the allegation. It also relayed lies about Mr. McCluskey to the director of operations for the BJCC, which barred Mr. McCluskey from working there for six months. Mr. McCluskey was ultimately exonerated.

Mr. McCluskey filed this lawsuit against Local 78 in state court, asserting claims of (1) defamation ("Count One"); (2) breach of contract ("Count Two"); (3) tortious interference with a business relationship ("Count Three");

(4) negligence ("Count Four"); (5) wantonness ("Count Five"); (6) malice ("Count Six"); and (7) fraud ("Count Seven"). (Doc. 1-2 at 2–10). Local 78 removed the case based on complete preemption under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. (Doc. 1). Local 78 then moved to dismiss the complaint for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). (Doc. 4 at 12–44).

Because Mr. McCluskey's response to the motion to dismiss included evidence drawing the court's subject matter jurisdiction into question, the court ordered the parties to brief whether § 301 supports Local 78's invocation of federal jurisdiction. (Doc. 15). The parties have done so. (Docs. 16, 17). The court now finds that it has original jurisdiction over every claim made in this case because Local 78's constitution is a contract between labor organizations and evaluation of Mr. McCluskey's claims is inextricably intertwined with that constitution. *See* 29 U.S.C. § 185(a).

Having found that subject matter jurisdiction exists, the court next turns to Local 78's motion to dismiss for failure to state a claim. (Doc. 3). Because § 301 preempts all of Mr. McCluskey's claims and he has not shown any interest in prosecuting a § 301 claim, the court **WILL GRANT** the motion and **WILL DISMISS** Mr. McCluskey's complaint.

## I.  BACKGROUND

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The court may also consider evidence attached to a defendant's motion to dismiss if the complaint incorporated the evidence by reference, the evidence is of undisputed authenticity, and the evidence is central to the plaintiff's claims. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

Both parties submit evidence in connection with the motion to dismiss. Local 78 submits its constitution and bylaws (doc. 4-1) and Mr. McCluskey submits a declaration from himself (doc. 11-1). The court may consider the constitution and bylaws in connection with the motion to dismiss because Mr. McCluskey's complaint incorporates them by reference (doc. 1-1 at 12–13 ¶¶ 50–52), Mr. McCluskey does not dispute their authenticity (*see generally* docs. 11, 17), and they are central to his claims. *See Fin. Sec. Assurance, Inc.*, 500 F.3d at 1284. However, the court may not consider Mr. McCluskey's affidavit or any of the evidence either party submitted in response to this court's jurisdictional question. (Doc. 11-1; doc. 16-1; doc. 16-2; doc. 17-1).

The same limitations on consideration of extrinsic evidence are not present when the court is determining the existence of subject matter jurisdiction. "[A] district court confronted with a factual challenge to its jurisdiction cannot ignore a genuine factual dispute simply because it arises at the pleading stage." *Am. C.L. Union of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1340 (11th Cir. 2017). Instead, "it has an obligation at any time to inquire into jurisdiction, including probing into and resolving any factual disputes which go to its power to adjudicate the matter." *Id.* (quotation marks and citation omitted); *see also Scarfo v. Ginsberg*, 175 F.3d 957, 961 (11th Cir. 1999), *abrogated in other part by Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) ("When faced with factual disputes regarding subject matter jurisdiction, the district court serves as the fact-finder and may weigh the evidence, provided that the challenge to subject matter jurisdiction does not implicate an element of the cause of action.").

As a result, the court is permitted to consider the various affidavits submitted in connection with the jurisdictional question. Nevertheless, the court concludes that consideration of that evidence is unnecessary in this case. Local 78's constitution, taken together with the arguments presented in jurisdictional briefing, is sufficient to persuade this court that it has original jurisdiction, and none of the affidavits present any evidence controverting that determination. Accordingly, the court's

description of the facts will be limited to the allegations in the complaint and the relevant parts of Local 78's constitution.

Local 78 is the local branch of the International Alliance of Theatrical and Stage Employees. (Doc. 1-1 at 4 ¶ 4). It provides venues with stagehands who work "at the union scale and under the union contract terms and conditions." (*Id.* at 7 ¶¶ 20–21). The BJCC is one such venue. (*Id.* at 7 ¶ 20). When the BJCC notifies Local 78 of a performance for which it needs stagehands, Local 78 issues a "call" to the members, who can sign up for the job. (*Id.*). The BJCC pays Local 78 for each member who works the job, and Local 78 pays the members through an associated entity. (Doc. 1-1 at 7–8 ¶¶ 21–22).

Local 78's constitution and bylaws set out various provisions governing the membership and the leadership of the local. (*See, e.g.*, doc. 4-1 at 4–5). Local 78's constitution provides that the local was "established and exists by virtue of a Charter issued by the [international union] and pursuant to the Constitution and Bylaws of" the international union. (*Id.* at 6). The international union maintains the authority to waive certain membership requirements and to reject applicants to local membership. (*Id.* at 7). And the international union's president must endorse "[a]ny additions, alterations, amendments or deletions" to the local's constitution before they can take effect. (*Id.* at 24).

5

The local constitution also describes the process for addressing charges against a member. (Doc. 1-1 at 12–13 ¶¶ 50–52; doc. 4-1 at 16, 22–23). An internal affairs committee must investigate all written charges against a member. (Doc. 4-1 at 16). The committee must hold a hearing on any charge, where the accused has the right to present a defense, confront and call witnesses, and examine the evidence. (*Id.* at 22). The committee must then make a written report of findings and recommendation for any penalty to be imposed. (*Id.* at 23). An accused may appeal to the general membership from the committee's findings and recommendation. (*Id.* at 16). The recommendation is binding unless a majority of the local's membership votes against the recommendation. (Doc. 4-1 at 23). An accused may appeal from the membership's decision to the international union's president, from there to the international union's general executive board, and from there to the international union's assembly. (*Id.*). Under Local 78's constitution, members cannot "resort to outside tribunals unless all remedies, therein provided, shall have been exhausted." (*Id.* at 24).

Mr. McCluskey has been a member of Local 78 since 2006. (Doc. 1-1 at 5 ¶ 6, 8 ¶ 27). In mid- to late 2021, Mr. McCluskey expressed interest in becoming a job steward for Local 78, but he was rebuffed by Local 78's assistant business agent Paul Whaley and business agent Bill Crowley. (*Id.* at 23 ¶¶ 105–108). In late November or early December 2021, an unnamed Local 78 member heard

Mr. Whaley, Mr. Crowley, and Local 78 member Barron Melton saying that they needed to get rid of Mr. McCluskey. (Doc. 1-2 at 2 ¶ 109). Around the same time, other members of the local heard Local 78's president express his dislike of Mr. McCluskey. (*Id.* at 2 ¶ 110).

In December 2021, Mr. Cluskey took a job at an Alabama Ballet performance at the BJCC. (Doc. 1-1 at 9 ¶ 29). Mr. McCluskey missed a cue from production director Seth Cain because a loud stage monitor masked the cue. (*Id.* at 9 ¶ 30). Mr. Cain believed that Mr. McCluskey missed the cue because he had been gawking at the dancers. (*Id.* at 9 ¶ 32). Mr. Cain reported the missed cue to Local 78's assistant business agent, Mr. Whaley, and later complained to both Mr. Whaley and Mr. Melton about the incident. (*Id.* at 9–10 ¶¶ 34–35). Mr. Whaley and Mr. Melton told Mr. Cain to submit a written complaint to Mr. Melton. (Doc. 1-1 at 10 ¶ 37). Before Mr. Cain submitted his complaint, Mr. Whaley filed an internal charge with Local 78 against Mr. McCluskey. (*Id.* at 10 ¶ 39, 12 ¶ 48). Several days later, Mr. Cain, purporting to act on behalf of the Alabama Ballet, filed a complaint against Mr. McCluskey with Local 78. (*Id.* at 10 ¶ 40; *see id.* at 10 ¶ 41).

At some point in late December 2021 or early January 2022, "one or more members, agents, and/or representatives of Local 78" told the BJCC's director of operations, Brian Mishkin, about Mr. Cain's allegation and that Mr. McCluskey had a history of improper conduct, sexual harassment, and complaints from clients about

similar behavior. (Doc. 1-1 at 11 ¶¶ 45–46, 14 ¶ 59). This was not true. (*Id.* at 11–12 ¶¶ 46–47). But based on these lies, Mr. Mishkin and Local 78 issued a six-month ban on Mr. McCluskey working at any BJCC facilities. (*Id.* at 14 ¶ 60). The ban was in writing and stated that it would end after the World Games concluded on July 17, 2022. (*Id.* at 14 ¶ 60, 20 ¶ 90).

Local 78 did not follow its constitutionally-required process with the complaint and charge against Mr. McCluskey. (*See* doc. 1-1 at 13 ¶ 52). In early January 2022, the internal affairs committee held a meeting to address Mr. Whaley's charge. (*Id.* at 13 ¶ 53). But instead of holding a trial or making findings, and despite a committee member reviewing Mr. McCluskey's files and reporting that Mr. McCluskey had no history of complaints from clients about similar behavior, the committee referred the matter to Local 78's executive board. (*Id.* at 13–14 ¶¶ 55–57). In February 2022, the executive board held a special meeting about Mr. McCluskey's alleged misconduct. (*Id.* at 16 ¶ 68). Although Mr. McCluskey denied the misconduct, the board honored the BJCC ban. (Doc. 1-1 at 16–17 ¶¶ 70–74).

In May 2022, the Alabama Ballet's artistic director, Tracey Alvey, emailed Mr. Mishkin (the BJCC's director of operations), Mr. Melton, and Local 78's secretary to state that Mr. Cain lacked the authority to act on Alabama Ballet's behalf and that there was no evidence to support Mr. Cain's allegation against

8

Mr. McCluskey. (*Id.* at 10 ¶ 41, 18 ¶ 78). Despite this, the BJCC did not lift the ban on Mr. McCluskey working for it and Local 78's president did not inform Mr. McCluskey of his exoneration. (*Id.* at 18–19 ¶¶ 80–83). In July 2022, Mr. Cain testified at an internal affairs committee meeting that his allegation about Mr. McCluskey was "inaccurate." (*Id.* at 19 ¶ 87).

Although the BJCC's ban was supposed to end in July 2022, Local 78 continued to refuse to put Mr. McCluskey on the call list for BJCC jobs. (Doc. 1-1 at 20 ¶¶ 90–91). For the next six months, Mr. McCluskey asked various Local 78 officials about returning to work at the BJCC but was told that the BJCC had a standing order preventing his working there. (Doc. 1-1 at 20–22 ¶¶ 90–102). In January 2023, Mr. McCluskey asked to see the standing order but Local 78 could not produce it. (*Id.* at 21 ¶¶ 96–99, 22 ¶ 103). Soon after, Mr. McCluskey's attorney contacted Mr. Mishkin and Local 78 suddenly put him back on the call list. (*Id.* at 22–23 ¶ 104).

## II.   JURISDICTION

As the court explained at more length in its show-cause order, the only basis for original jurisdiction in this case is complete preemption under § 301. (Doc. 15 at 2–4); *Loc. 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962) ("The dimensions of [§] 301 require the conclusion that substantive principles of federal labor law must be paramount in the

area covered by the statute."). Under § 301, a federal court has jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . , or between any such labor organizations." 29 U.S.C. § 185(a).

Section 301 preempts both contract and tort claims if the claim involves "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). Section 301 does not, however, preempt all "dispute[s] concerning employment, or tangentially involving a provision of a collective-bargaining agreement . . . . Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation." *Id.* at 211–12. Instead, the court must determine whether "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213.

Local 78's constitution is a contract between labor organizations. In addition to setting out the terms of the relationship between members and the local, the constitution also gives the international union rights and obligations with respect to the local's membership and veto authority over proposed amendments to the constitution. (Doc. 4-1 at 7, 24); *see United Ass'n of Journeymen & Apprentices of*

*Plumbing & Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Loc. 334, United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 452 U.S. 615, 621 (1981) (explaining why an international union's constitution was a contract between labor organizations); *Pruitt v. Carpenters' Loc. Union No. 225 of the United Broth. of Carpenters & Joiners of Am.*, 893 F.2d 1216, 1219 (11th Cir. 1990).

The next question is whether Mr. McCluskey's claims involve "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement." *Allis-Chalmers Corp.*, 471 U.S. at 211. Mr. McCluskey asserts seven state law claims, for defamation, breach of contract, tortious interference with a business relationship, negligence wantonness, maliciousness, and fraud. (Doc. 1-2 at 2–10). The court finds that it has original jurisdiction over all the claims.

1. Count One (Defamation)

In Count One, Mr. McCluskey alleges that Local 78 defamed him by making false allegations about him to "one or more BJCC decision makers and/or others outside of Local 78 who had the authority to deny [Mr. McCluskey] work at BJCC." (Doc. 1-2 at 2 ¶ 112). Based on the alleged in the complaint, this claim can only relate to statements "one or more members, agents, and/or representatives of Local

11

78" made to Mr. Mishkin about Mr. Cain's allegation that Mr. McCluskey was gawking at the ballet dancers. (Doc. 1-1 at 11 ¶¶ 45–46, 14 ¶ 59).

To determine whether § 301 completely preempts this claim, the court must look to the elements of defamation under Alabama law. *Lightning v. Roadway Express, Inc.*, 60 F.3d 1551, 1557 (11th Cir. 1995). In Alabama, a private figure alleging defamation must prove (1) a false and defamatory statement about the plaintiff; (2) an unprivileged communication of the statement to a third party; (3) "fault amounting at least to negligence on the part of the defendant"; and (4) either special harm caused by the statement or that the statement is actionable without having to prove special harm. *Dolgencorp, LLC v. Spence*, 224 So. 3d 173, 186 (Ala. 2016) (quotation marks omitted); *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091 (Ala. 1988); *cf. Mead Corp. v. Hicks*, 448 So. 2d 308, 310–12 (Ala. 1983).

The second element of the claim—an unprivileged communication to a third party—is inextricably intertwined with Local 78's constitution. *See Allis-Chalmers Corp.*, 471 U.S. at 213. A communication is conditionally privileged where it was "prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest," so long as the communication was "made in good faith and without actual malice." *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1094

(Ala. 1988) (quotation marks omitted). The "duty" under which the defendant made the communication "need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken." *Id.* (quotation marks omitted). To establish malice, a plaintiff may present "evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like or violence of the defendant's language, and the mode and extent of publication, and the like." *Id.* at 1095 (cleaned up).

Two parts of this element are likely to require consideration of Local 78's constitution. First, whether Local 78 had or believed it had a duty to disclose Mr. Cain's allegation to the BJCC will require evaluation of the constitution—even if ultimately the decisionmaker concludes that the constitution did not create such a duty. *Cf. Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988) (explaining that a state tort was not preempted because no element of the tort required a court to construe the labor contract). Second, determining whether Local 78 acted with malice is likely to require consideration of whether it complied with its constitution in addressing the charges against Mr. McCluskey. In his claim for malice, for example, Mr. McCluskey asserts that Local 78 acted maliciously by "ignoring their obligations under Local 78's constitution." (Doc. 1-2 at 8 ¶ 145). As a result, this element of the defamation claim is inextricably intertwined with Local

78's constitution and § 301 completely preempts it. *See Allis-Chalmers Corp.*, 471 U.S. at 213.

### 2. Claims Two through Seven

In Claims Two through Seven, Mr. McClusky asserts claims for breach of contract, tortious interference with a business relationship, negligence, wantonness, maliciousness, and fraud. (Doc. 1-2 at 3–10). Each of these claims expressly depends, at least in part, on Local 78's failure to comply with its obligations to him under the constitution. (*Id.* at 4 ¶¶ 123, 5 ¶ 128, 6 ¶ 133, 7 ¶ 138, 8 ¶ 145, 9–10 ¶¶ 152–53). Several of the claims also expressly depend on Mr. McCluskey's allegation of defamation. (*Id.* at 5 ¶ 128, 6 ¶ 133, 7 ¶ 138, 8 ¶ 145). Evaluation of these claims would clearly involve consideration of the constitution. *See Allis-Chalmers Corp.*, 471 U.S. at 213. As such, § 301 completely preempts them and the court has original jurisdiction over them.

### III. MERITS

Having found that original jurisdiction exists over every claim in this action, the court turns to Local 78's motion to dismiss for failure to state a claim. (Doc. 4). Local 78 asserts various grounds for dismissal, but the court need address only whether § 301 warrants dismissal of the claims as well as their removal to federal court. (Doc. 4-1 at 12–13, 27–39).

The court pauses here to note that, although it has already found all of the claims completely preempted under § 301, the question whether they should be dismissed under § 301 based on ordinary preemption is slightly different. Complete preemption "occurs when the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim," thereby giving the court original jurisdiction. *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.3d 851, 854 (11th Cir. 1999). On the other hand, ordinary preemption is an affirmative defense based on the "supremacy of federal law." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1260 n.16 (11th Cir. 2011). Despite this distinction between complete preemption and ordinary preemption, the Supreme Court has explained that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp.*, 471 U.S. at 220.

Mr. McCluskey has indicated no desire to assert a § 301 claim. His complaint asserts only state law claims. (Doc. 1-2 at 2–10). Neither his response to the motion to dismiss nor his response to the court's show-cause order argues that the court should treat the claims as brought under § 301. (*See generally* docs. 11, 17). Indeed, although he proposes dismissing his breach of contract claim "in order to preserve

his right to go forward in State Court under his remaining tort claims" (doc. 17 at 5), he has not proposed that this court construe any of his claims as being brought under § 301. Nor has he properly requested leave to amend the complaint. *See Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1163 (11th Cir. 2019). The court declines to construe a § 301 claim out of whole cloth absent some indication that Mr. McCluskey wishes to assert a § 301 claim. Accordingly, the court **WILL GRANT** the motion to dismiss and **WILL DISMISS** all of Mr. McCluskey's state law claims as preempted by § 301.

## IV.   CONCLUSION

The court **WILL GRANT** Local 78's motion to dismiss and **WILL DISMISS** Mr. McCluskey's complaint.

**DONE** and **ORDERED** this July 25, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE